**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| CRAWFORD & COMPANY and BROADSPIRE SERVICES, INC., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No.______________________ |
| TERESA FAYE MORRIS DDS PC and TERESA FAYE MORRIS, *a/k/a* TERESA F. MOODY, | ) | |
| Defendants. | ) | |

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND DAMAGES**

**COME NOW** Plaintiffs Crawford & Company and Broadspire Services, Inc., and state their Complaint against Defendants Teresa Faye Morris DDS PC and Teresa Faye Morris, *a/k/a* Teresa F. Moody as follows:

**PARTIES, PERSONAL JURISDICTION, AND VENUE**

1. Plaintiff Crawford & Company ("Crawford") is a Georgia corporation whose principal place of business is in the State of Georgia.

2. Plaintiff Broadspire Services, Inc. ("Broadspire") is a Delaware corporation whose principal place of business is in the State of Georgia.

3. Defendant Teresa Faye Morris DDS PC ("Morris PC") is a Missouri professional corporation with a principal place of business located at 3905 E Woodside Way, Springfield, Missouri, 65809.

4. Morris PC may be served with process through its Registered Agent, Teresa Faye Morris, at its Registered Office, with an address of 3905 E Woodside Way, Springfield, Greene County, Missouri 65809.

5. Defendant Teresa Faye Morris, *a/k/a* Teresa F. Moody ("Ms. Morris") is an individual who resides and may be served with process at 3905 E. Woodside Way, Springfield, Missouri 65809, or wherever she may be found.

6. On information and belief, Ms. Morris is a shareholder and officer of Morris PC.

7. On information and belief, Ms. Morris exercises dominion and control over Morris PC and its assets.

8. At all times pertinent hereto, Ms. Morris acted on her own behalf and as a shareholder, officer, and agent of Morris PC.

9. Personal jurisdiction exists as to Morris PC because it is a Missouri entity and regularly conducts business in the State of Missouri. Accordingly Morris PC is subject to the general jurisdiction of this Court.

10. Further, Morris PC has sufficient minimum contacts with the State of Missouri related to the transactions and events in this action also giving rise to specific jurisdiction.

11. Personal jurisdiction exists as to Ms. Morris because she resides in the State of Missouri. Further, Ms. Morris has sufficient minimum contacts with Missouri related to the transactions and events in this action also giving rise to specific jurisdiction.

12. This Court has personal jurisdiction over the Defendants in that they are residents of the State of Missouri, they continuously and systematically conducted business in Missouri, and they engaged and continue to engage in violations of Plaintiffs' rights in this judicial district.

13. Venue lies in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in the Western District of Missouri.

14. Venue also lies in this district under 28 U.S.C. § 1391(b)(1) because Morris PC and Ms. Morris each reside in the Western District of Missouri.

15. Venue is appropriate in the Southern Division of this district under Local Rule 3.2(a)3 because Morris MC and Ms. Morris each reside in either Greene or Taney County, Missouri.

**SUBJECT-MATTER JURISDICTION**

16. As set forth below, Plaintiffs, on the one hand, and Defendants, on the other hand, are citizens of different states. The amount in controversy exceeds $75,000. Accordingly, this Court has diversity jurisdiction over this proceeding pursuant to 28 U.S.C. §1332(a).

*Crawford's Citizenship*

17. Crawford is a citizen of the State of Georgia, where it is incorporated and maintains its principal place of business.

18. Broadspire is a citizen of the State of Delaware, where it is incorporated, and a citizen of the State of Georgia, where it maintains its principal place of business.

*Morris PC's Citizenship*

19. Morris PC is a citizen of Missouri, because it is incorporated and maintains its principal place of business in Missouri.

*Ms. Morris's Citizenship*

20. Ms. Morris is a citizen of Missouri because she is domiciled in Missouri, in that she is physically present in Missouri with the intent to remain in Missouri indefinitely.

21. Ms. Morris's intent to remain in Missouri indefinitely is established by objective factors including, but not limited to, the following:

a. Ms. Morris obtained a professional license to be a dentist in Missouri;

b. Ms. Morris established a professional corporation (i.e., Morris PC) in Missouri in March 2012 that remains active with the Missouri Secretary of State, and which maintains both a principal office address and a registered office address in Springfield, Missouri;

c. Ms. Morris owns or controls (directly or indirectly through a "Moody Family Trust") several parcels of residential real property in Missouri, including real property located at 129 N. Tuscany Drive, Hollister, Taney County, Missouri, where she is believed to reside;

d. In or around February 2022, the State of Missouri issued a driver's license to Ms. Morris identifying Morris's address as 129 N. Tuscany Drive, Hollister, Missouri;

e. Ms. Morris uses P.O. Box 3220 in Springfield, Missouri, as her mailing address; and

f. Ms. Morris holds herself out as located in Missouri on social media such as LinkedIn, Facebook, and Twitter.

*Amount in Controversy*

22. The amount in controversy exceeds $75,000 because this matter involves Defendants' fraudulent acquisition and improper retention of $900,000.

## FACTUAL BACKGROUND

23. Crawford provides claims administration, loss adjustment, and other claims-management services as a third-party administrator for various insurers and other businesses.

24. Crawford performs its services and transacts business through its division, Crawford Global Technical Services ("Crawford GTS"), from time to time. As a division, Crawford GTS is the same legal entity as Crawford.

25. Broadspire is a wholly-owned subsidiary of Crawford and, from time to time, Broadspire provides operational assistance to Crawford GTS in the form of bank account management services.

26. This matter arises out of (i) Crawford GTS's administration of personal injury liability claims asserted by two individual claimants (the "Claimants") against Crawford GTS's client (the "Respondent") earlier in 2023, and (ii) Broadspire's disbursement of a check from one of its accounts (the "Broadspire Account") on behalf of Crawford GTS in the amount of $900,000 (the "$900K Check").

27. The Claimants' claims were resolved with the Respondent on or around March 17, 2023, pursuant to a confidential settlement agreement between the parties thereto (the "Personal Injury Settlement").

28. The Claimants were represented by a law firm, Crane Injury Law, P.C. (the "Crane Firm"), during the negotiations with the Respondent that resulted in the Personal Injury Settlement.

29. Pursuant to the Personal Injury Settlement, the Respondent authorized and directed Crawford to pay the total sum of $900,000 to the Claimants (the "Personal Injury Payment").

30. Initially, the Personal Injury Payment was to be made through two checks—one for $750,000 and one for $150,000—each made payable jointly to a Claimant and the Crane Firm.

31. On multiple occasions in March 2023, as the Crane Firm and the Respondent were finalizing the Personal Injury Payment, a person identifying as Jennifer Vejar—a case manager employed by the Crane Firm—contacted the Respondent and Crawford purporting to be an agent

and authorized representative of the Crane Firm and the Claimants. At this time it is unknown whether this person (hereafter "Jane Doe Fraudster") (i) may be Jennifer Vejar, in which case Jennifer Vejar is complicit in the fraudulent scheme described herein, (ii) may be Ms. Morris, or (iii) may be a person other than Jennifer Vejar or Ms. Morris acting alone or in concert with one or more co-conspirators.

32. At all times pertinent hereto Jane Doe Fraudster[1] acted to defraud the Respondent and Crawford and divert the Personal Injury Payment for her own benefit and possibly the benefit of other unknown co-conspirators.

33. On March 13, 2023, Jane Doe Fraudster contacted the Respondent by email and requested that the Personal Injury Payment be wired to a designated account with Capital One instead of paid by check to be delivered to the Crane Firm.

34. On or about March 17, 2023, Jane Doe Fraudster sent wire instructions to the Respondent, identifying a deposit account with Capital One (the "Capital One Account"). A true copy of the wire instructions delivered by Jane Doe Fraudster is attached as Exhibit 1.

35. On information and belief, the Capital One Account is not a bona fide account of the Crane Firm, and instead is an account controlled by Jane Doe Fraudster and/or one or more persons acting in concert with her.

36. Over the course of several additional emails and telephone conversations, Jane Doe Fraudster demonstrated knowledge of the confidential details of the Personal Injury Settlement, as would only be expected if she were indeed Jennifer Vejar or another employee of the Crane Firm, and she asked the Respondent to change the manner of the Personal Injury Payment.

[1] Jennifer Vejar is female. If Jane Doe Fraudster is someone other than Ms. Vejar, Jane Doe Fraudster's sex is unknown at this time. For the sake of simplicity, Plaintiffs will use the female gender to describe Jane Doe Fraudster in this pleading.

37. Believing Jane Doe Fraudster to be a bona fide employee and agent of the Crane Firm, the Respondent authorized and directed Crawford to communicate with Jane Doe Fraudster for the purpose of finalizing the Personal Injury Payment; and thereafter, Crawford's employee engaged with Jane Doe Fraudster by email and telephone regarding the Personal Injury Settlement and the Personal Injury Payment.

38. Additionally, Jane Doe Fraudster communicated with the Respondent and Crawford through an imposter e-mail address designed to appear as a bona fide email address for Jennifer Vejar, a Crane Firm employee.

39. Jane Doe Fraudster communicated with Crawford and the Respondent from the e-mail address jvejar@craneinjuryiaw.com (the "Fake E-Mail Address"). That e-mail address is virtually identical to the legitimate e-mail address jvejar@craneinjurylaw.com utilized by the employee of the same name who is employed by the Crane Firm (the "Legitimate E-Mail Address"). The sole difference between the Fake E-Mail Address and the Legitimate E-Mail Address is the substitution of "i" for "l" in the "law" portion of the address.

40. To help perpetrate this fraudulent scheme, Jane Doe Fraudster also purported to copy Dan Crane on these e-mails. Mr. Crane is the owner of the Crane Firm, the attorney who negotiated the Personal Injury Settlement on behalf of the Claimants, and an agent of the Personal Injury Claimants by virtue of his role as their attorney.

41. By purportedly copying Mr. Crane on these e-mails, Jane Doe Fraudster gave the appearance that these communications were made at Mr. Crane's direction.

42. However, Jane Doe Fraudster used a second imposter e-mail address for Mr. Crane. Upon further scrutiny after-the-fact, the e-mail address dcrane@craneinjuryiaw.com that Jane Doe

Fraudster included in her e-mail communications as the copy recipient address is not the legitimate email address for Mr. Crane.

43. Mr. Crane's legitimate e-mail address is dcrane@craneinjurylaw.com. As with the Fake E-Mail Address for Jane Doe Fraudster, the copy recipient address on Jane Doe Fraudster's e-mail communications substituted "i" for "l" in the "law" portion of the address.

44. In telephone and e-mail communications with Crawford—in which she pretended to be Jennifer Vejar and acting on behalf of the Crane Firm—Jane Doe Fraudster directed that the Personal Injury Payment be made (i) by check payable to Morris PC, and (ii) delivered to a residential address believed to be owned (directly or indirectly) and/or occupied by Ms. Morris, at 3905 E Woodside Way, Springfield, Missouri 65809.

45. On information and belief, Jane Doe Fraudster is Ms. Morris; or, in the alternative, Jane Doe Fraudster is an individual acting in concert with Ms. Morris in furtherance of a fraudulent scheme to divert the Personal Injury Payment away from the Claimants for their joint benefit.

46. Due to the above-described deceptions and Jane Doe Fraudster's knowledge of details of an otherwise confidential Personal Injury Settlement, Jane Doe Fraudster tricked Crawford into believing it was communicating with someone within the Crane Firm who had authority to provide new instructions for the Personal Injury Payment.

47. In reliance upon Jane Doe Fraudster's instructions, Crawford directed the $900K Check to be issued by Broadspire from the Broadspire Account. Broadspire, in turn, issued the $900K Check on or about April 6, 2023, payable to the order of Morris PC instead of the Claimants or the Crane Firm. A true copy of this check (front and back) is attached as Exhibit 2.

48. Crawford then mailed the $900K Check to Morris PC at the address provided by Jane Doe Fraudster, to-wit: 3905 E Woodside Way, Springfield, Missouri 65809.

49. On information and belief, Ms. Morris received delivery of the $900K Check at the residence address where it was delivered.

50. On information and belief, Ms. Morris endorsed the $900K Check as an agent of Morris PC.

51. On information and belief, Ms. Morris deposited the $900K Check in an account belonging to Morris PC with O'Bannon Bank in Springfield, Missouri.

52. The $900K Check cleared on April 10, 2023 and, on information and belief, some or all of the funds were subsequently withdrawn by Ms. Morris.

53. Weeks later, Crawford was notified by its bank, Truist, that a check in the amount of $750,000 had been presented to Truist for payment from the Broadspire Account. This second check was not a bona fide check of Broadspire, but contained certain account information to resemble a bona fide check.

54. This second check identified one of the Claimants as the payee, which led to a comprehensive review within Crawford of all recent activity involving the Claimants, the Crane Firm, the Personal Injury Settlement, and the Personal Injury Payment.

55. Only upon this comprehensive review did Crawford discover Jane Doe Fraudster's scheme, and the fact that the Personal Injury Payment had been diverted by Jane Doe Fraudster instead of being paid to the Claimants.

56. Efforts to mitigate the damage caused by Jane Doe Fraudster's scheme have failed to date. None of the funds from the $900K Check have been returned to Crawford or Broadspire.

57. To the extent that Morris PC or Ms. Morris continues to have access to the funds deposited in the account with O'Bannon Bank on or about April 10, 2023, those funds are at risk of misuse, waste, or squandering by Defendants.

58. Accordingly, it is imperative that Plaintiffs obtain injunctive relief on an expedited basis to enjoin Defendants from using, withdrawing, or transferring the funds remaining in the account with O'Bannon Bank during the pendency of this lawsuit; and related, O'Bannon Bank should be enjoined from permitting any use, withdrawal, or transfer of such funds during the pendency of this lawsuit.

59. Furthermore, Defendants should be enjoined from using, withdrawing, transferring, or otherwise exercising possession or control over the funds, wherever the funds are presently located, during the pendency of this lawsuit.

60. Injunctive relief is necessary because Plaintiffs do not have an adequate remedy at law if these funds continue to be diminished and expended by Defendants or any other individuals or entities who are not entitled to the funds and for purposes which the funds were not intended.

## **COUNT I**

## **FRAUD**

61. Plaintiffs hereby incorporate the preceding paragraphs of this Complaint as if fully restated herein.

62. Under the circumstances presented herein, Plaintiffs assert a claim of fraud against Defendants.

63. "Fraud is defined as an instance or act of trickery or deceit especially when involving misrepresentation; an act of deluding." *Johnson v. Saddler*, 322 S.W.3d 544, 546 (Mo. Ct. App. 2010) (quoting *Memco, Inc. v. Chronister*, 27 S.W.3d 871, 875 (Mo. Ct. App. 2000)).

64. "[M]isrepresentations that amount to fraud … may be accomplished by conduct or artifice, as well as by words calculated to mislead another. …To prove actionable fraud, it is not essential that a misrepresentation be directly made or consist of positive assertions. A false

impression made by words or deeds in order to mislead another and gain an undue advantage over the other suffices. … In such a case, a misrepresentation implied from the circumstances may be equivalent to a misrepresentation positively expressed. *Wion v. Carl I. Brown & Co.*, 808 S.W.2d 950, 954, 954–55 (Mo. Ct. App. 1991).

65. Ms. Morris used trickery and deceit to delude and mislead Plaintiffs, with the intention of diverting the $900K Check to herself and her company Morris PC.

66. Defendants accomplished this scheme through conduct, artifice, and words calculated to create false impressions that (among other things): (a) Crawford was communicating with a woman who had been previously identified as and known to Crawford as an employee and agent of the Crane Firm; (b) Crawford was communicating with an agent of the Crane Firm, authorized to provide instructions regarding the Personal Injury Settlement and Personal Injury Payment; and (c) the instructions that resulted in the delivery of the $900K Check to Ms. Morris in Springfield, Missouri were legitimate rather than an outright fraudulent attempt at misappropriation of the funds.

67. In doing so, Defendants specifically intended that Plaintiffs act consistent with this false impression by making the $900K Check payable to Morris PC and sending it to the residence in Springfield, Missouri where Ms. Morris is believed to reside.

68. In justified and reasonable reliance on Defendants' conduct, artifice, and words, Plaintiffs acted upon this false impression.

69. Defendants unlawfully obtained possession and control of the $900K Check and proceeds thereof to Plaintiffs' detriment.

70. Defendants have failed and refused to account for or return the funds to Plaintiffs.

71. Defendants are jointly and severally liable to Plaintiffs for the damages resulting from this fraud, in an amount to be determined at trial.

**<u>COUNT II</u>**

**CONVERSION**

72. Plaintiffs hereby incorporate the preceding paragraphs of this Complaint as if fully restated herein.

73. Under the circumstances presented herein, Plaintiffs assert a claim against Defendants for the tort of conversion.

74. Under Missouri law, conversion is the unauthorized assumption and exercise of the right to ownership over personal property of another to the exclusion of the owner's rights. *JEP Enterprises, Inc. v. Wehrenberg, Inc.*, 42 S.W.3d 773, 775 (Mo. Ct. App. 2001).

75. Conversion may be established in one of three ways: "(1) by tortious taking; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner, or (3) by a refusal to give up possession to the owner on demand." *Aldridge v. Francis*, 503 S.W.3d 314, 317 (Mo. Ct. App. 2016)

76. Money is the appropriate subject of conversion when it can be described or identified as a specific chattel.

77. Defendants' use of deceit and fraud to obtain the $900K Check and proceeds thereof from Plaintiffs is a tortious taking.

78. Additionally, Defendants have refused to return the funds derived from the $900K Check to Plaintiffs despite demand therefor.

79. Plaintiffs claim and are entitled to recover damages from Defendants, jointly and severally, for the principal sum of $900,000, plus prejudgment interest at the legal rate.

## COUNT III

## MONEY HAD AND RECEIVED

80. Plaintiffs hereby incorporate the preceding paragraphs of this Complaint as if fully restated herein.

81. Under the circumstances presented herein, Plaintiffs assert a claim against Defendants for money had and received.

82. Money had and received is a viable claim under Missouri law. "An action for money had and received will lie when the defendant received money from or for the plaintiff that belongs in good conscience to the plaintiff. For instance, if the plaintiff paid money to the defendant … by reason of fraud … , a claim for money had and received is made out." *Dickey v. Royal Banks of Missouri*, 111 F.3d 580, 583 (8th Cir. 1997) (citing *Teachers Credit Union v. Olds*, 553 S.W.2d 545, 547 (Mo.Ct.App.1977), and *Fenberg v. Goggin*, 800 S.W.2d 132, 135 (Mo. Ct. App. 1990)).

83. Defendants received the $900K Check and proceeds thereof from Plaintiffs through deceit and fraud.

84. In equity and good conscience, this money does not belong to Defendants, but rather to Plaintiffs.

85. Defendants are jointly and severally liable to Plaintiffs for the principal sum of $900,000, plus prejudgment interest at the legal rate.

## COUNT IV

## UNJUST ENRICHMENT

86. Plaintiffs hereby incorporate the preceding paragraphs of this Complaint as if fully restated herein.

87. Under the circumstances presented herein, Plaintiffs assert a claim against Defendants for unjust enrichment.

88. To prevail on a claim of unjust enrichment, a plaintiff must show "(1) the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it would be unjust to allow the defendant to retain the benefit." *Day v. Hupp*, 528 S.W.3d 400, 413 (Mo. Ct. App. 2017).

89. Defendants are and were enriched by the receipt of the $900K Check and proceeds thereof.

90. This enrichment was at the expense of Plaintiffs, as these funds are and were intended for use in discharging Crawford's obligation to make the Personal Injury Payment to the Claimants on behalf of the Respondent.

91. It would be unjust to allow Defendants to retain this benefit because, among other things, Defendants have no lawful right or claim to the $900K Check or proceeds thereof. These funds constitute stolen property.

**<u>COUNT V</u>**

**INJUNCTIVE RELIEF**

92. Plaintiffs hereby incorporate the preceding paragraphs of this Complaint as if fully restated herein.

93. By virtue of the deposit of the $900K Check in Morris PC's account with O'Bannon Bank, Defendants are improperly holding and in possession of funds that should be returned to Plaintiffs—whether such funds remain in the O'Bannon Bank deposit account or otherwise.

94. If Defendants do not return these funds, there is a significant risk that these funds can be (further) depleted by Defendants during the pendency of this lawsuit.

95. Under the circumstances presented herein, Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief relative to the $900K Check and proceeds thereof.

96. Plaintiffs seek and are entitled to temporary, preliminary, and permanent injunctive relief in the form of an injunctive order:

a. Requiring Defendants to fully account for the funds in their possession, custody, or control, derived from the $900K Check, whether on deposit with O'Bannon Bank or otherwise;

b. Prohibiting Defendants from spending, wasting, transferring, or wasting or diminishing such funds in any way during the pendency of this lawsuit;

c. Directing any other individuals or entities having possession, custody, or control over any such funds (including O'Bannon Bank, as applicable), upon notice of entry of such injunctive order, to account for and surrender such funds to the Court; and

d. Such other and further equitable relief that the Court deems proper to safeguard and preserve such funds and proceeds thereof during the pendency of this lawsuit.

97. Plaintiffs are substantially likely to prevail upon the merits of the other claims in this lawsuit.

98. The injunctive relief sought by Plaintiffs is necessary in order to ensure return of and preserve any funds or other property derived from the $900K Check.

99. In the absence of the foregoing equitable relief, Plaintiffs will likely suffer irreparable harm.

100. Indeed, the likelihood of irreparable harm to Plaintiffs in the absence of injunctive relief far outweighs any harm to Defendants by imposing such relief.

101. Good cause exists for the entry of injunctive relief pursuant to Fed. R. Civ. P. 65 and other applicable law.

**COUNT VI**

**PUNITIVE DAMAGES**

102. Plaintiffs hereby incorporate the preceding paragraphs of this Complaint as if fully restated herein.

103. "[W]here a conversion is established, the owner of the converted property … may recover punitive damages if the conversion is malicious." *Alexander v. Link's Landing, Inc.*, 814 S.W.2d 614, 620 (Mo. Ct. App. 1991).

104. Punitive damages are appropriate here because Defendants maliciously converted Plaintiffs' property by using deceit and fraud.

105. In addition or in the alternative, through the conduct described above, Defendants intentionally harmed and caused harm to Plaintiffs, without just cause, so as to justify an award of punitive damages under Mo. Ann. Stat. § 510.261.5.

**COUNT VII**

**ATTORNEY'S FEES**

106. Plaintiffs hereby incorporate the preceding paragraphs of this Complaint as if fully restated herein.

107. Defendants' actions described above are and were intentional, spiteful, fraudulent, groundless, willful, and malicious.

108. Defendants acted at all relevant times with the specific intent to defraud.

109. Plaintiffs are entitled to and hereby claim their expenses incurred in connection with the investigation, commencement, and prosecution of this lawsuit, including their attorney fees.

**WHEREFORE,** having stated their Complaint against these Defendants, Plaintiffs pray for the following relief:

A. Under Count I, for judgment against Defendants, jointly and severally, for the principal sum of $900,000, prejudgment interest at the legal rate, and such other compensatory damages as may be proven at trial; or nominal damages in the alternative;

B. Under Count II, for judgment against Defendants, jointly and severally, for the principal sum of $900,000, prejudgment interest at the legal rate, and such other compensatory damages as may be proven at trial; or nominal damages in the alternative;

C. Under Count III, for judgment against Defendants, jointly and severally, for the principal sum of $900,000, plus prejudgment interest at the legal rate;

D. Under Count IV, for judgment against Defendants, jointly and severally, for the principal sum of $900,000, plus prejudgment interest at the legal rate;

E. Under Count V, for entry of one or more injunctive orders for temporary, preliminary, and permanent injunctive relief, as described in more detail hereinabove;

F. Under Count VI, for an award of punitive damages against both Defendants in an amount to be determined at trial;

G. Under Count VII, for an award of reasonable attorney's fees, costs, and expenses, in an amount to be determined at trial;

H. Under all Counts, for such other legal and equitable relief as the Court deems just and appropriate;

I. For Defendants to be taxed with all costs; and

J. For an award of reasonable attorney's fees and expenses, in an amount to be proven at trial, as authorized under applicable law.

Dated: July 10, 2023

Respectfully Submitted:

KUTAK ROCK LLP

By: *__/s/ J. Taylor White__*

J. Taylor White (MO Bar No. 67001)
KUTAK ROCK LLP
300 S. John Q Hammons Parkway Ste. 800
Springfield, MO 65806-2550
Telephone: (417) 720-1410
Facsimile: (417) 720-1411
taylor.white@kutakrock.com

Kevin A. Stine (GA Bar No. 682588)
Tim Colletti (GA Bar No. 972791)
BAKER DONELSON
3414 Peachtree Rd NE
1500 Monarch Plaza
Atlanta, GA 30326
(404) 577-6000
kstine@bakerdonelson.com
tcolletti@bakerdonelson.com
[*Pending Pro Hac Vice Admission*]

**ATTORNEYS FOR PLAINTIFF**